JENNIFER S. SMITH
LAW OFFICES OF JENNIFER SMITH PLLC
165 Broadway, 23rd Floor
New York, New York 10006
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mar-Can Transportation Company, Inc., <br><br> Plaintiff, <br><br> -against- <br><br> Local 854 Pension Fund, <br><br> Defendant. | 20-CV-8743 <br><br> **COMPLAINT** |

Plaintiff Mar-Can Transportation Company Inc. ("Mar-Can" or the "Employer"), by its attorney Law Offices of Jennifer Smith PLLC, as and for its Complaint in this action alleges as follows:

## NATURE OF ACTION

1. This dispute arises from a change in collective bargaining representative by a group of unionized bus drivers and mechanics. Because the workers obtain pension benefits through their union, they changed pension funds when they changed unions. Under these circumstances, ERISA requires the workers' old pension fund to transfer their pensions to the new pension fund.

2. Because the workers changed pension funds, their employer ceased contributing to the old pension fund and began contributing to the new pension fund for its employees. Typically, pension funds assess withdrawal liability against employers who stop contributing to the fund, to ensure that any pension obligations the withdrawing employer leaves behind are properly funded.

3. However, employers are not required to pay withdrawal liability on pension obligations the old fund transfers to a new fund, because those pension obligations are not left behind. Perhaps self-evidently, the old fund has no need to collect employer withdrawal liability to fund pensions it is not obligated to pay.

4. The employer brings this action to compel the old pension fund to transfer the pensions to the new fund. It also seeks to compel the old fund to recalculate its withdrawal liability to account for the pension transfer, and reduce or eliminate its interim withdrawal liability payments accordingly.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1451, Employee Retirement Income Security Act ("ERISA") Section 4301, 28 U.S.C. § 1331.

6. Venue is proper in this district because the plaintiff does business and has a principal place of business within this district, in the County of Westchester. 29 U.S.C. § 1451, ERISA s. 4301.

## PARTIES

7. Plaintiff Mar-Can is a for-profit New York corporation doing business as an employer within the meaning of 29 U.S.C. § 1002(5), ERISA s. 3(5).

8. Mar-Can maintains a principal place of business at 318 E.3rd Street, Mount Vernon, NY in Westchester County.

9. Mar-Can is a bus company, transporting primarily special needs schoolchildren.

10. Upon information and belief, the Defendant Local 854 Fund is an employee benefit plan within the meaning of 29 U.S.C. § 1002(3), ERISA s. 3(3).

11. Upon information and belief, the Local 854 Fund (the "Old Plan") is a multi-employer plan within the meaning of 29 U.S.C. § 1002(37), ERISA s. 3(37) and 29 U.S.C. § 1301(a)(3), ERISA s. 4001(a)(3).

12. Upon information and belief, the Local 854 Fund maintains its office and is administered at 50 Lindbergh Blvd., Suite 207, Uniondale, New York 11553 in Nassau County.

13. Upon information and belief, the Local 854 Fund was established pursuant to the terms of various collective bargaining and assumption agreements, including collective bargaining agreements between International Brotherhood of Teamsters Local 553 (the "Old Union"), which is a labor organization representing employees in an industry affecting commerce, and various employer associations and/or employers, including Mar-Can.

14. Upon information and belief, the Local 854 Fund provides pension benefits to covered employees and their dependents and beneficiaries.

## STATEMENT OF FACTS

**Mar-Can's Employees Change Unions, and Therefore Pension Plans**

15. At all relevant times before March 2020, the Employer was bound by one or more collective bargaining agreements ("CBA") with the Old Union.

16. The CBA required the Employer to contribute to the Old Plan in an amount based on the number of hours worked by employees who performed work that was covered by the CBA (the "Bargaining Unit").

17. The Bargaining Unit employees are primarily school bus drivers and mechanics.

18. In or about March 2020, the National Labor Relations Board ("NLRB") certified the results of an election in which the Bargaining Unit employees voted to change their collective bargaining representative from the Old Union, to independent Local 854 (the "New Union").

19. In or about July 2020, the Employer began contributing to the Amalgamated Transit Workers Local 854 Pension Fund (the "New Plan"), the pension fund associated with the New Union, on behalf of Bargaining Unit employees.

20. In September 2020, New York City reopened schools for certain children, including many of the special needs children bused to school by the Employer.

21. As a result, all Bargaining Unit employees have either resumed or shortly will resume work, and have either begun participating or will participate in the New Plan.

**The Old Plan Assesses Withdrawal Liability Against Mar-Can**

22. After the NLRB-certified election, the Employer requested a participation agreement from the Old Plan.

23. Under a participation agreement, the Employer's employees would continue to participate in the Old Plan despite the change in collective bargaining representative. The Employer would not withdraw from the Old Plan because it would continue to contribute to the Old Plan. Because the Employer would not withdraw, it would not be assessed withdrawal liability by the Old Plan.

24. The Old Plan refused the Employer's request for a participation agreement.

25. By letter dated April 21, 2020 (the "Notice"), pursuant to 29 U.S.C. § 1399(b), ERISA s 4219(b), and 29 U.S.C. § 1382, ERISA s. 4202, the Old Plan notified

4

the Employer that the Employer had completely withdrawn from the Old Plan due to the permanent cessation of its obligation to contribute to the Old Plan for the Bargaining Unit.

26. The Notice advised the Employer that it owed withdrawal liability to the Old Plan in the amount of $1,798,978, plus interest.

27. Pursuant to 29 U.S.C. § 1399(b)(1), ERISA s 4219(b)(1), the Notice demanded payment of the Employer's withdrawal liability in 17 quarterly installments, including 16 quarterly installments of $116,930 and one final quarterly payment in the amount of $85,950, plus interest on any unpaid installments.

28. As of the date of filing of this Complaint, the Employer has made three quarterly payments.

**Old Plan Refuses to Initiate Pension Transfer**

29. On or about July 17, 2020, the Employer sent the Old Plan a Request for Review of its withdrawal liability assessment.

30. In its Request for Review, the Employer advised the Old Plan that the Old Plan was obligated to transfer pension assets and liabilities to the New Plan pursuant to 29 U.S.C. § 1415.

31. In September, the Employer contacted the Old Plan again, and asked it to work co-operatively to achieve a voluntary pension transfer, without the need for litigation.

32. In October, the Employer contacted the Old Plan again, and again asked it to work co-operatively to achieve a voluntary pension transfer, without the need for litigation.

33. By letter dated October 12, 2020, the Employer formally demanded that the Old Plan comply with 29 U.S.C. § 1415 and initiate the pension transfer, to avoid litigation.

34. The Old Plan has failed to initiate the pension transfer.

**Old Plan Refuses to Adjust Interim Withdrawal Liability Payments**

35. Once the Old Plan determines that it will transfer pension assets and liabilities to the New Plan, it must reduce the Employer's withdrawal liability assessment under 29 U.S.C. § 1391(e) by the amount of unfunded vested pension benefits that the Old Plan estimates it will transfer to the New Plan (the "New Assessment").

36. The Old Plan must recalculate the Employer's interim withdrawal liability payment schedule based on the New Assessment.

37. In its Request for Review, the Employer advised the Old Plan that the Old Plan was obligated to reduce the Employer's withdrawal liability assessment under 29 U.S.C. §1391(e).

38. By letter dated October 12, 2020, the Employer formally demanded that the Old Plan estimate the mandatory reduction in the Employer's withdrawal liability and adjust the Employer's interim withdrawal liability payment schedule accordingly.

39. The Old Plan has failed to reduce the Employer's withdrawal liability assessment by the amount of unfunded vested benefits that the Old Plan estimates will be transferred to the New Plan.

40. The Old Plan has failed to reissue the Employer's interim withdrawal liability payment schedule based on the New Assessment.

**Employer Demands Arbitration**

41. On or about October 7, 2020, the Employer timely filed a Demand and Notice of Initiation of Arbitration ("Arbitration Demand") with the American Arbitration Association ("AAA"), challenging the amount of its withdrawal liability assessment.

42. Pending a final ruling on the amount of withdrawal liability the Employer must pay to the Old Plan by an arbitrator or court, the Employer is obligated to make interim withdrawal liability payments on the schedule and in the amount demanded by the Old Plan. 29 U.S.C. § 1401(d), ERISA s. 4221; 29 U.S.C. § 1399(c)(2), ERISA s. 4219(c)(2).

43. As required by ERISA, the Employer is paying all withdrawal liability installments in full as they come due, on the original schedule and in the original amount set by the Old Plan.

## FIRST CLAIM FOR RELIEF
### (Transfer Pension Assets and Liabilities Pursuant to 29 U.S.C. § 1415(b))

44. The Employer repeats each and every allegation above as if fully set forth herein.

45. The Employer has completely withdrawn from the Old Plan.

46. The Old Plan is a multiemployer pension plan.

47. The Employer has withdrawn from the Old Plan as a result of a certified change in collective bargaining representative by its employees (the "Certified Election").

48. As a result of the Certified Election, employees of the Employer who previously participated in the Old Plan are now participating in the New Plan.

49. The New Plan is a multiemployer plan.

50. Under ERISA, the Old Plan must transfer pension assets and liabilities to the New Plan.

## SECOND CLAIM FOR RELIEF
### (Recalculate Interim Payment Schedule Under 29 U.S.C. § 1391(e))

51. The Employer repeats each and every allegation above as if fully set forth herein.

52. The Old Plan must transfer pension liabilities to the New Plan.

53. This transfer of pension liabilities is incident to an Employer withdrawal from the Old Plan.

54. The Old Plan must reduce the Employer's withdrawal liability obligation by an amount equal to the unfunded vested benefits the Old Plan transfers to the New Plan.

55. In the interim, the Old Plan must estimate the reduction in the Employer's withdrawal liability required under 29 U.S.C. § 1391(e).

56. The Old Plan must reassess the Employer's withdrawal liability interim payment schedule using the withdrawal liability assessment estimated under 29 U.S.C. § 1391(e).

WHEREFORE, the Employer demands the following relief:

A. An order directing the Old Plan to initiate the pension transfer;

B. An order directing the Old Plan to reduce the Employer's withdrawal liability by an amount equal to the unfunded vested pension benefits transferred by the Old Plan to the New Plan;

C. An order directing the Old Plan to estimate the withdrawal liability that will be assessed against the Employer upon the completion of the pension transfer;

D. An order directing the Old Plan to reissue the Employer's interim withdrawal liability payment schedule based on the estimated withdrawal liability;

E. An award of attorneys' fees and costs incurred by the Employer;

F. Such other and further relief as the Court deems just and proper.

Dated: New York, NY
October 20, 2020

LAW OFFICES OF JENNIFER SMITH PLLC

By: _____
Jennifer S. Smith, Esq.
165 Broadway, 23rd Floor
New York, New York 10006
(347) 689-7557
*Attorney for Plaintiff*