UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MAR-CAN TRANSPORTATION CO., INC.,

                                        Plaintiff,                    **DECISION AND ORDER**

                    -against-                                        20 Civ. 8743 (CS)(PED)

LOCAL 854 PENSION FUND,

                                        Defendant.
------------------------------------------------------------X
**PAUL E. DAVISON, U.S.M.J.**


    This ERISA action arises from plaintiff's employees' change in union representation and pension plan. Familiarity with the record is assumed.

    Presently before this Court is defendant's motion (Dkt. #126) to compel plaintiff to join Amalgamated Transit Workers Local 854 Pension Fund as a party to this action pursuant to Rule 19 of the Federal Rules of Civil Procedure ("FRCP"). This motion is before me pursuant to an Order of Reference for general pretrial supervision entered April 30, 2021 (Dkt. #87). For the reasons that follow, defendant's motion is **DENIED**.

## I. BACKGROUND

A. ERISA Framework

    Congress enacted ERISA in 1974 with the purpose of ensuring that employees and their beneficiaries would not be deprived of anticipated benefits from their private retirement pension plans. 29 U.S.C. §§ 1001-1381; *see T.I.M.E.-DC, Inc. v. Mgmt.-Lab. Welfare & Pension Funds, of Loc. 1730 Int'l Longshoremen's Ass'n*, 756 F.2d 939, 943 (2d Cir. 1985). Congress created the Pension Benefit Guaranty Corporation ("PBGC"), a wholly-owned government corporation

within the Department of Labor, in order to guarantee the payment of benefits to plan

beneficiaries. The PBGC would be responsible for paying a plan's obligations if the plan

terminated with insufficient assets to support its guaranteed benefits. *Id.* (internal citations

omitted).

A "multiemployer plan" under ERISA is any pension benefit plan to which multiple

employers contribute and is maintained by one or more collective bargaining agreement between

employers and unions. 29 U.S.C. §§ 1002(37)(A), 1301(a)(3). Multiemployer plans mitigate the

risk of financial default for plan beneficiaries by spreading that risk across multiple employers.

*See, e.g., UFCW Loc. 174 Pension Fund v. 5600 Mkt. Corp.*, Case No. 17 Civ. 5789 (CBA)

(CLP), 2018 WL 4403394, at *5 (E.D.N.Y. Aug. 16, 2018), *report and recommendation*

*adopted as modified*, 2018 WL 4388452 (E.D.N.Y. Sept. 14, 2018). To the extent a pension plan

would be obligated to pay benefits that have vested for employees but have been unfunded by

their employer, other participating employers would bear that cost and ensure that the plan would

not default. However, multiemployer plans face the risk of financial collapse if contributing

employers withdraw because the plan's outstanding obligations to employees would remain the

same, but the number of employers responsible to fund those obligations is reduced. *Id.* As a

result, additional employers may be incentivized to withdraw from the plan, leaving the plan

unable to fulfill its financial obligations. *T.I.M.E.-DC, Inc.*, 756 F.2d at 943.

Congress recognized these risks and feared that the PBGC would be forced to assume

financial obligations in excess of its ability. *T.I.M.E.-DC, Inc.*, 756 F.2d at 943. Consequently,

Congress enacted the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") in

order to protect the interests of plan participants and beneficiaries in financially distressed

multiemployer plans. *Id.* at 943-44 (internal citations omitted).  Under the MPPAA, an employer that withdraws from a multiemployer plan must pay its proportionate share of the pension plan's unfunded vested benefits, known as "withdrawal liability." *UGCW Loc. 174 Pension Fund*, 2018 WL 4403394, at *5; 29 U.S.C. § 1381.

ERISA provides a comprehensive scheme to calculate withdrawal liability.  29 U.S.C. §§ 1381-99; *see Trustees of Loc. 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 130 (2d Cir. 2012).  In relevant part, withdrawal liability is calculated based on the employer's allocated share of the plan's "unfunded vested benefits," defined as the value of nonforfeitable benefits under the plan, less the value of the assets of the plan.  29 U.S.C. §§ 1393(b) and (c).  A "nonforfeitable benefit" is defined as a benefit to which a participant is entitled.  29 U.S.C. § 1301(a)(8).  The unfunded vested benefits are calculated based on certain interest rate assumptions used by the plan's actuary.  29 U.S.C. §§ 1393(b); 29 C.F.R. § 4006.4(c).  ERISA's withdrawal liability requirements have been described as a "pay first, question later" provision, meaning an employer is required to make withdrawal liability payments regardless of whether there is a dispute as to the amount of the liability.  *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 5 (E.D.N.Y. 2001).

Additionally, when an employer withdraws as a result of a certified change of collective bargaining representative and where employees who participated in the former plan will, as a result of that change, participate in another multiemployer plan, ERISA mandates the transfer of assets and liabilities from the old plan to the new plan.  29 U.S.C. § 1415(a).  Further, upon the transfer of assets and liabilities from the old plan to the new plan, the employer's withdrawal liability shall be reduced by an amount equal to the difference between the amount of the

transferred unfunded vested benefits and the value of the transferred assets.  29 U.S.C. § 1415(c).

Finally, when an old fund notifies a new fund of its intent to transfer assets and liability pursuant to a change in bargaining representation, the new fund may object to the transfer by appealing to the PBGC within 60 days of receiving the notice.  29 U.S.C. § 1415(b)(3).  If the new plan (or the employer) fail to object to the transfer within 60 days, or if the PBGC does not, within 180 days of the appeal, make a finding that the new plan would suffer substantial financial harm, then the old fund "shall" issue the transfer.  29 U.S.C. § 1415(b)(2)(B).

B. Facts

Plaintiff is a non-profit corporation that buses special needs school children in the New York City and Westchester metropolitan areas.  Plaintiff employs bus drivers and mechanics who, prior to March 2020, were unionized under the International Brotherhood of Teamsters Local 553 ("the old union").  Defendant is a multi-employer pension plan as defined under ERISA.  29 U.S.C. §§ 1002(37)(A), 1301(a)(3).  Pursuant to the collective bargaining agreement between plaintiff and the old union, plaintiff contributed pension payments to defendant ("the old plan") on behalf of its bargaining unit employees.

In or around March 2020, plaintiff's bargaining unit employees voted to leave the old union and join the Amalgamated Transit Workers Local 854 ("the new union").  On March 18, 2020, the National Labor Relations Board certified the results of the election.  Dkt. #140-4.  On April 21, 2020, defendant sent plaintiff a Notice and Demand for Payment of Withdrawal Liability on the ground that plaintiff had "permanently ceased covered operations or ceased to have an obligation to contribute" to defendant as a result of the NLRB certification of the election.  Dkt. #140-5.  Defendant assessed a "withdrawal liability" against plaintiff in the

amount of $1,798,978, to be paid in seventeen installments.  To date, plaintiff has made each of

these payments.  In or around July 2020, plaintiff began making contributions to the

Amalgamated Transit Workers Local 854 Pension Fund ("the new fund") pursuant to its

collective bargaining agreement with the new union.

By letter dated July 17, 2020, plaintiff requested that defendant reassess its withdrawal

liability calculations.  Dkt. #13-2.  By letter dated August 13, 2020, defendant rejected plaintiff's

arguments concerning recalculation of the withdrawal liability.  Dkt. #13-3.

According to defendant, by letter dated October 3, 2020, it requested documents from

plaintiff concerning the new fund "so that Defendant could determine whether the conditions

existed for the transfer of assets liabilities and reduction of withdrawal liability." Dkt. #72

(Amended Answer to Amended Complaint), at ¶ 15.  On October 20, 2020, plaintiff commenced

this action.  Dkt. #1.  Plaintiff filed an Amended Complaint on January 14, 2021.  Dkt. #47.

Through the instant litigation, plaintiff seeks to compel the old plan to transfer assets and

liabilities to the new plan and to reduce plaintiff's withdrawal liability accordingly.

On May 20, 2021, defendant notified the new fund that "if and when it is determined that

the ATW Local 854 Pension Plan is a multiemployer defined benefit plan," defendant would

transfer nonforfeitable liabilities of $5,479,926 and assets of $3,680,318 to the new plan,

calculated as of October 1, 2020.  Dkt. #140-16.  Plaintiff asserts that the new fund "has not

objected to the PBGC or otherwise attempted to block the pension transfer, and its deadline for

doing so expired on or about July 19, 2021." Dkt. #141, at 10 (ECF pagination). *See* Dkt. #140

at ¶21.  To date, defendant has not transferred assets and liabilities to the new fund, seemingly

due only to the parties' ongoing dispute as to whether plaintiff has provided documents sufficient

to establish that the new plan is a qualifying Multiemployer Pension Plan

## II. DISCUSSION

Defendant seeks to compel plaintiff to join the new fund as a party to this action pursuant to FRCP 19.  Rule 19(a) states:

> (1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Under Rule 19(a)(1)(A), "complete relief" pertains only to the parties currently joined, and does not consider additional relief between an existing party and the party whose joinder is sought.  *LRN Corp. v. Markel Ins. Co.*, No. 20 Civ. 8431, 2021 WL 3727062, at *3 (S.D.N.Y. Aug. 23, 2021) (collecting cases; internal citations omitted).  Additionally, possession of relevant information is insufficient to confer "necessary party" status.  *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F. Supp.2d 446, 456 (S.D.N.Y. 2010).

In order for Rule 19(a)(1)(B) to apply, the absent party must come forward and claim an interest in the outcome of the litigation.  *Reit v. Post Properties, Inc.*, No. 09 Civ. 5455, 2010 WL 743533, at *3 (S.D.N.Y. Feb. 24, 2010).  In addition, the moving party must show that the

-6-

non-party would suffer "identifiable harm" without joinder, under Rule 19(a)(1)(B)(i). *Bayer Corp. v. Smithkline Beecham PLC*, No. 95 Civ. 5582, 1996 WL 34164, at *5 (S.D.N.Y. Jan. 29, 1996). Alternatively, under Rule 19(a)(1)(B)(ii), the substantial risk of incurring double, multiple, or otherwise inconsistent obligations must be caused by the absence of the non-party. *Greenwich Life Settlements, Inc.*, 742 F. Supp.2d at 456 (internal citations omitted). "Rule 19 does not protect a party from logically inconsistent results, only inconsistent obligations." *Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*, No. 09 Civ. 1431, 2009 WL 2135396, at *4 (S.D.N.Y. July 16, 2009). "It is the threat of inconsistent obligations, rather than the mere possibility of additional litigation, that affects joinder considerations." *Philips Credit Corp. v. Three Cities FM, Inc.*, No. 92 Civ. 2061, 1993 WL 15460, at *5 (S.D.N.Y. Jan. 8, 1993).

Here, defendant asks the Court to compel plaintiff to join the new fund pursuant to FRCP 19(a)(1)(B) on the basis that it has an interest in the outcome of this litigation, namely the transfer of assets and liabilities from defendant, and that the new fund's absence will subject defendant to a substantial risk of incurring inconsistent obligations. Specifically, defendant argues that the new fund has a potential claim against the old fund concerning the transfer of assets and liabilities. Contrary to defendant's assertion, its argument fails to establish that the new fund is a "necessary" party under FRCP 19(a).

First, the new fund has not come forward and claimed an interest in this litigation. That fact, by itself, defeats defendant's motion under Rule 19(a)(1)(B). *Reit*, 2010 WL 743533, at *3. Second, defendant argues that the new fund may subsequently file a civil action against defendant, challenging the valuation of the assets and liabilities transferred, which may expose defendant to inconsistent obligations. Defendant's argument is misplaced. Defendant does not

run the risk of "inconsistent" obligations; rather, defendant runs the risk of facing a subsequent civil action which may obligate it to readjust the pension transfer values. As stated above, the mere possibility of subsequent litigation is insufficient to invoke Rule 19. *Philips Credit Corp.*, 1993 WL 15460, at *5.

In sum, defendant fails to demonstrate that the new fund is a "necessary" party under FRCP 19(a). Accordingly, defendant's motion to compel plaintiff to join the new fund as a party to this action is **DENIED**.


The Clerk of the Court shall terminate the pending motion (Dkt. #126).


Dated: January ___, 2022
       White Plains, New York

**SO ORDERED.**

PAUL E. DAVISON, U.S.M.J.

-8-