UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
MAR-CAN TRANSPORTATION COMPANY, INC.,
Plaintiff,

-against-

LOCAL 854 PENSION FUND,

Defendant.
---------------------------------------------------------------X

**OPINION & ORDER**

20-CV-8743 (CS)

Appearances:

Jennifer S. Smith
Law Offices of Jennifer Smith PLLC
New York, New York
*Counsel for Plaintiff*

Anusha Rasalingam
Friedman & Anspach
New York, New York

Stephen J. Mogila
Lauren Bonaguro
Mogila Law Group
New York, New York
*Counsel for Defendant*

Seibel, J.

Before the Court is Plaintiff's motion for attorney's fees. (ECF No. 291.) For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

The Court presumes the parties' familiarity with the underlying facts and procedural history of this case as set forth in the Court's opinion on the parties' motions for summary judgment. *See Mar-Can Transp. Co., Inc. v. Loc. 854 Pension Fund*, 722 F. Supp. 3d 355 (S.D.N.Y. 2024), *appeal withdrawn*, No. 24-1063, 2024 WL 3504319 (2d Cir. June 7, 2024),

*and judgment aff'd, cross-appeal dismissed as moot*, 167 F.4th 581 (2d Cir. 2026).

## II. LEGAL STANDARD

A district court may, in its discretion, award attorney's fees to the prevailing party in an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §§ 1132(g)(1), 1451(e); *see also N. Star Indus., Inc. v. Loc. 854 Pension Fund*, No. 24-CV-4580, 2025 WL 844423, at *15 (S.D.N.Y. Mar. 18, 2025) (sections 1132(g)(1) and 1451(e) governed by the same factors). The only factor that a court *must* consider in making this determination is whether a party obtained "some degree of success on the merits." *Donachie v. Liberty Life Assurance Co. of Bos.*, 745 F.3d 41, 46 (2d Cir. 2014); *see Div. 1181, Amalgamated Transit Union – N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, No. 13-CV-9112, 2018 WL 4757938, at *2 (S.D.N.Y. Oct. 2, 2018) ("[W]hether a party has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion.") (emphasis in original).[1] Courts also have discretion to consider the following five additional factors, sometimes referred to as the *Chambless* factors:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. 39 Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987), *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010).

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

"Although fees may be awarded to either party, it is well-established that Congress intended the fee provisions of ERISA to encourage beneficiaries to enforce their statutory rights." *Div. 1181*, 2018 WL 4757938, at *2. Accordingly, "when the prevailing party is the employer, courts exercise cautiously the discretionary power to award fees." *United Plant & Prod. Workers Loc. 175 Pension Fund by Kilkenny v. J. Pizzirusso Landscaping Corp.*, No. 20-CV-2527, 2022 WL 4139160, at *6 (E.D.N.Y. Aug. 9, 2022); *see Sigmund Cohn Corp. v. Dist. No. 15 Machinists Pension Fund by its Bd. of Trs.*, 804 F. Supp. 490, 495-96 (E.D.N.Y. 1992) (collecting cases).

## III. <u>DISCUSSION</u>

Plaintiff argues that the Court should award it attorney's fees because it "prevailed on 100 percent of the relief it sought." (ECF No. 293 ("P's Mem.") at 2.) According to Plaintiff, "[t]he Supreme Court explicitly disavowed" the five-factor test set forth in *Chambless* and clarified that ERISA only requires courts to consider whether a fees claimant has shown success on the merits. (*Id.* (citing *Hardt*, 560 U.S. at 255).) While Defendant does not dispute that Plaintiff was successful on the merits, it argues that this alone does not entitle Plaintiff to attorney's fees, as "fees are awarded to contributing employers out of fund assets only when such awards accord with ERISA's 'statutory purpose of vindicating retirement rights.'" (ECF No. 294 ("D's Opp.") at 4 (quoting *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 298 (2d Cir. 2004)).)

Although Plaintiff is correct that success on the merits is the only mandatory consideration, courts are "not required to award fees simply because this pre-condition has been met." *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 110 (2d Cir. 2011) (*per curiam*). Rather, once a court determines that a fee claimant has shown some success on the merits, it then has

discretion to award fees. *See id.*; *Testa v. Becker*, No. 10-CV-6229, 2017 WL 5133341, at *3 (W.D.N.Y. Nov. 6, 2017). And while a court is not required to consider the *Chambless* factors, they nonetheless provide a useful framework for guiding its discretion. *See Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 150 n.7 (2d Cir. 2013) (*Chambless* factors "guide district courts in exercising their discretion in awarding a reasonable attorney's fee"); *see also Brightman v. 1199seiu Health Care Emps. Pension Fund*, No. 18-CV-4932, 2021 WL 809373, at *17 (S.D.N.Y. Mar. 2, 2021) ("[I]f a court chooses to consider factors other than a plaintiff's success on the merits in assessing a request for attorneys' fees, *Chambless* still provides the relevant framework in this Circuit, and courts must deploy that useful framework in a manner consistent with the Second Circuit's case law.").

In short, while Plaintiff's success on the merits *permits* the Court to award attorney's fees, it does not *mandate* such an award. And because the *Chambless* factors counsel against awarding attorney's fees in this case for the reasons set forth below, Plaintiff's motion is denied.

**A. <u>Degree of Defendants' Culpability or Bad Faith</u>**

With respect to the first factor, "'culpability' and 'bad faith' are distinct standards, and a district court need not reach the question of bad faith in order to find the first *Chambless* factor satisfied." *Vangas v. Montefiore Med. Ctr.*, No. 11-CV-6722, 2014 WL 5786720, at *6 (S.D.N.Y. Nov. 5, 2014); *see Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 48 (2d Cir. 2009). "A finding of culpability involves more than mere negligence, but does not require malice or an ulterior motive." *Fisher v. Aetna Life Ins. Co.*, No. 16-CV-144, 2020 WL 5898788, at *7 (S.D.N.Y. Oct. 5, 2020), *aff'd*, 32 F.4th 124 (2d Cir. 2022). "A party is 'culpable' if its conduct is blameable; censurable; at fault; involving the breach of a legal duty or the commission of a fault." *Dist. Photo Inc. Health Care Plan v. Pyrros*, No. 13-CV-4285, 2017 WL 2334027, at

*4 (E.D.N.Y. May 30, 2017); *see Vangas*, 2014 WL 5786720, at *6.

Plaintiff argues that this factor militates in its favor because Defendant "needlessly multiplied litigation expenses by taking indefensible positions." (P's Mem. at 3.) In support of this argument, Plaintiff cites Defendant's initial failure to appear in the action, its failure to execute the Section 1415 transfer until the Court's May 2022 order, and Defendant's purportedly "inequitable" position with respect to the amount of Plaintiff's withdrawal liability. (*Id.* at 3-4.)

As to Plaintiff's first argument, the fees incurred as a direct result of Defendant's initial failure to appear were minimal. First, as Defendant points out, (D's Opp. at 2), the less than three-month period during which Defendant was unrepresented constitutes only a small fraction of the parties' four years of litigation. And the majority of the litigation during that period involved the motion to intervene and dismiss of the union trustees, which was a result of dysfunction between the union and employer trustees (one of the latter being the owner of Plaintiff, s*ee* ECF No. 12 at 18), and their inability to agree on counsel, (*see* ECF No. 56 at 15-17). Even if this failure could be considered blameworthy, it did not involve the denial of rights or benefits guaranteed by ERISA such that awarding attorney's fees for such conduct would further the purposes of the statute. *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 450 (2d Cir. 2006) ("A defendant is 'culpable' under *Chambless* where it violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate.").

In support of its second argument, Plaintiff argues that "the Fund's obligation to execution the Section 1415 Transfer was never seriously in doubt." (P's Mem. at 7.) The record, however, paints a more complicated picture. The parties engaged in a contentious dispute as to whether, and to what extent, Plaintiff was required to prove to Defendant that the

New Plan was a multiemployer plan as required by Section 1415.[2] Indeed, during several conferences discussing the issue, the Court expressed confusion as to why Plaintiff refused to simply provide the requested documents to end the dispute. (*See, e.g.*, ECF No. 92-1 at 12:1-9 (noting that Defendant's request "doesn't sound unreasonable" and asking why Plaintiff would not provide requested documents under an attorneys' eyes only designation so "we can put ourselves out of our misery"); *id.* at 16:2-3 ("[I]t seems to me the most cost effective way for your client to get what it wants is to share these documents with [defense counsel]."); ECF No. 106 at 17:24-18:2 ("I understand your concern that this potentially quote-unquote bogs down the lawsuit, but we have an adversarial process here. What's the harm in providing these documents to defense counsel?"). After months of litigation on the issue, Plaintiff ultimately provided the requested documents. (*See* D's Opp. at 2; ECF No. 295 ("P's Reply") at 3.)[3]

And while Defendant did not actually complete the transfer until after it was ordered to do so in May 2022, this delay was not unexplained. Rather, Defendant argued that it first needed to recalculate the amounts to be transferred pursuant to "mass withdrawal" procedures,[4] and it moved for a stay until these procedures had been fulfilled. (*See* ECF No. 171 at 5 ("Because of

[2] Although Plaintiff argues that Defendant could not seriously have doubted the legitimacy of the New Plan, given that some of the companies contributing to the New Plan were owned by employer trustees, (*see* P's Mem. at 7), the conflicts between the employer trustees and union trustees clearly caused a breakdown in communication, as demonstrated by the early stages of this litigation.

[3] It is not clear exactly when the requested documents were produced. The parties filed a confidentiality stipulation on July 27, 2021, (ECF No. 108), and Plaintiff claims that it provided copies of the New Plan's collective bargaining agreements in August 2021, (*see* P's Reply at 3), but Defendant's opposition to Plaintiff's February 2022 partial summary judgment motion claimed that it was not until November 2021 that "Plaintiff Mar-Can finally produced all documents needed by Defendant Teamsters Fund's legal counsel to determine whether the new ATW Plan is a multiemployer defined benefit plan," (ECF No. 171 at 2 n.1).

[4] The parties disagreed as to whether a mass withdrawal had taken place. (*See* ECF No. 171 at 5.)

the mass withdrawal, Plaintiff Mar-Can's withdrawal liability will increase and the amount of assets to transfer, if any, to the new ATW Plan will decrease from the $3.4 million figure calculated in May 2021."); *id.* at 9 (arguing that transfer was not required until parties agreed on amounts to be transferred).) It further argued that the parties' dispute as to the proper interest rate to be used in the calculation of transferrable assets and liabilities had to be decided by an arbitrator, rather than by this Court. (*Id.* at 9-10.) While the Court rejected Defendant's arguments, reasoning that the mass withdrawal issue was irrelevant to the initial Section 1415 transfer because "the assessment of initial liability is made without consideration of mass withdrawal," (ECF No. 187 at 34:16-24), and that arbitration of the initial withdrawal liability amount was unnecessary because Plaintiff was seeking transfer only of the amount calculated by Defendant, (*id.* at 33:23-34:9),[5] the delay between Defendant's receipt of the requested information and its completion of the Section 1415 transfer was based on colorable, even if ultimately meritless, grounds.

Finally, with respect to the parties' withdrawal liability dispute, "[i]n determining whether [a losing party's] conduct is culpable or rises to the level of bad faith, courts have looked to whether the losing party's arguments were exceedingly strained or without foundation." *United Plant & Prod. Workers*, 2022 WL 4139160, at *12. Here, as the Second Circuit recognized, Defendant's interpretation of the ERISA provision governing withdrawal liability was a "plausible reading of the statute," *Mar-Can*, 167 F.4th at 594, which had been

[5] The Court agreed with Defendant that disputes under Section 1415, such as the correct interest rate assumption, may be arbitrable. (*See* ECF No. 187 at 23:15-25:23.) But because Plaintiff at that point sought transfer only of the amount of assets and liabilities as calculated by Defendant, the parties' dispute as to the proper calculation of withdrawal liability did not need to be decided before the Section 1415 transfer could be initiated, and thus the Court disagreed with Defendant's argument that arbitration was required prior to the transfer. (*Id.* at 27:5-22, 30:13-18, 35:11-22.)

"endorsed by a thoughtful district court decision in our Circuit," *id.* at 584. Although this Court ultimately concluded, and the Circuit agreed, that Defendant's interpretation was incorrect, that does not mean that its opposition to Plaintiff's suit amounted to culpable conduct. *See Dist. Photo Inc.*, 2017 WL 2334027, at *5 (declining to award attorney's fees where losing fund "pursued the matter in good faith to comport with its fiduciary duty to protect its assets, and its interpretations of both the Plan Document and the relevant case law were neither strained nor untenable"); *Sigmund Cohn Corp.*, 804 F. Supp. at 496 (declining to award attorney's fees to prevailing employer in withdrawal liability suit where "the Fund advanced colorable legal arguments in what is an uncertain area of law"). While Plaintiff insists that Defendant took this position in an attempt to "to game the system to obtain a windfall for itself," (P's Mem. at 4), the fact that Defendant's interpretation favored funds over employers is not surprising, let alone the sort of culpable conduct that would satisfy the first factor. Accordingly, the first factor does not support a fees award.

**B. <u>Ability to Pay</u>**

As to the second factor, while Defendant has conceded that it has "sufficient assets to pay the fee award," (D's Opp. at 8), it is only a party's "*inability* to pay an award [that] weighs in its favor," while "its *ability* to pay generally is neutral in effect," *Alfano v. CIGNA Life Ins. Co. of N.Y.*, No. 07-CV-9661, 2009 WL 890626, at *2 (S.D.N.Y. Apr. 2, 2009) (emphases in original); *see Brown v. Bd. of Trs. of Bldg. Serv. 32B-J Pension Fund*, 392 F. Supp. 2d 434, 447 (E.D.N.Y. 2005) ("[F]indings of ability to pay are neutral."). Thus, that Defendants have the ability to pay is neutral in the analysis.

**C. <u>Deterrence</u>**

Plaintiff argues that the third factor supports a fee award because "attorney fee awards

encourage pension funds to exercise their powers under ERISA responsibly." (P's Mem. at 4.) But as discussed with respect to the first factor, while the Court may have ultimately found in Plaintiff's favor, Defendant does not appear to have been acting arbitrarily, but rather was taking a position that by its lights "comport[ed] with [its] fiduciary duty to protect the Fund's assets." *Sigmund Cohn Corp.*, 804 F. Supp. at 496; *see Dist. Photo Inc.*, 2017 WL 2334027, at *4. As such, an award of attorney's fees here would not serve as an effective deterrent, and the third factor is not met. *See Chapman v. ChoiceCare Long Island Long Term Disability Income Plan*, No. 05-687, 2005 WL 3556194, at *2 (2d Cir. Dec. 29, 2005) (summary order) (agreeing with court below that "awarding attorney's fees would not deter future violations because the defendant had not violated any established rule"); *Dist. Photo Inc.*, 2017 WL 2334027, at *6 ("[G]iven the absence of culpability . . . , there is no misconduct to deter.").

**D. Relative Merits of the Parties' Positions**

The fourth factor, which considers the relative merits of the parties' positions, is closely related to the first factor. *See Slupinski*, 554 F.3d at 48; *Demonchaux v. Unitedhealthcare Oxford*, No. 10-CV-4491, 2014 WL 1273772, at *5 (S.D.N.Y. Mar. 27, 2014); *LaBarbera v. Abbey Tool & Indus. Supply Co.,* No. 07-CV-3114, 2008 WL 4198546, at *5 (E.D.N.Y. Sept. 5, 2008). Thus, courts often consider these two factors together. *See Anita Founds., Inc. v. ILGWU Nat. Ret. Fund*, 902 F.2d 185, 189-90 (2d Cir. 1990); *Slupinski*, 554 F.3d at 48. Here, as discussed above, Defendant's position – particularly with respect to the withdrawal liability issue – was justifiable, albeit incorrect. Accordingly, the fourth factor does not support an award of fees. *See Div. 1181*, 2018 WL 4757938, at *4 ("Given that there was no evidence of culpability or bad faith, the relative merits of the parties' respective positions does not tip the discretionary analysis in [Plaintiff's] favor."); *Mahoney v. J.J. Weiser & Co.*, 646 F. Supp. 2d 582, 586

(S.D.N.Y. 2009) (absent culpability or bad faith, "[losing party's] position cannot be considered so substantially devoid of merit as to tip the *Chambless* factors dispositively [in prevailing party's] favor"), *aff'd sub nom. Toussaint*, 648 F.3d 108.

**E. <u>Whether the Action Conferred a Common Benefit on a Group of Pension Plan Participants</u>**

Finally, the fifth factor "has been described in terms of the benefit conferred on pension plan participants and is not wholly applicable where it is the employer seeking fees." *Anita*, 902 F.2d at 191. On the other hand, courts have suggested that the resolution of a significant legal issue regarding ERISA may suffice as a common benefit under this factor. *See id.* (finding "some benefit to others" where employer's successful withdrawal liability suit against fund caused the fund to withdraw "similar demands against some thirty other employers"); *see also Chapman*, 2005 WL 3556194, at *2 (remanding for lower court to "consider whether the legal precedent established by this case and the benefits that that precedent might confer on other plan participants make an award of attorney's fees appropriate"); *Algie v. RCA Glob. Commc'ns, Inc.*, 891 F. Supp. 875, 893-94 (S.D.N.Y. 1994) (common benefit factor satisfied where plaintiffs "sought to resolve a number of legal issues that are potentially significant in other ERISA controversies"), *aff'd*, 60 F.3d 956 (2d Cir. 1995).

Plaintiff argues that the decision on withdrawal liability issue benefitted the participants of the New Plan, as their pensions may otherwise have been "materially underfunded." (P's Mem. at 5.) In support of this argument, Plaintiff cites my March 2024 summary judgment decision for the proposition that Defendant's interpretation of ERISA would "disadvantage[]" the new pension plan. (*Id.* (citing *Mar-Can*, 722 F. Supp. 3d at 373).) This is an oversimplification of that decision, which reasoned that Defendant's interpretation *could* disadvantage a new plan *if* an employer left a new plan shortly after joining, before it built up a

history of significant contributions. *See Mar-Can*, 722 F. Supp. 3d at 373. While this "potential funding loophole" suggested that Plaintiff's interpretation was more in line "with the purpose and goals behind withdrawal liability," *id.* at 373-74, there is no indication that employers have engaged in such a practice. In other words, the hypothetical illustrated a flaw in Defendant's reasoning, but there was no active funding deficit that Plaintiff's victory remedied.

Moreover, as discussed above, many of Plaintiff's arguments with respect to the first four factors focus on Defendant's failure to initiate the Section 1415 transfer rather than the withdrawal liability dispute. And while the Court ultimately ordered that transfer, the transfer itself did not confer a substantial benefit on the beneficiaries of the New Plan, as Defendant points out, (*see* D's Opp. at 18 n.3) – the beneficiaries still received the same benefits, and the only difference was which plan paid them out. Indeed, the initial transfer involved more liabilities than assets, such that the New Plan would technically be worse off than it was prior to the transfer, at least until Plaintiff's contributions to the New Plan made up the difference. *See Mar-Can*, 167 F.4th at 584 (Defendant transferred "$5.5 million in Mar-Can-related liabilities and $3.7 million in Mar-Can-related assets").

Plaintiff's other argument on this factor – that its suit resolved a significant legal issue by informing future plans and employers how to properly calculate withdrawal liability – is somewhat more persuasive. *See Chapman*, 2005 WL 3556194, at *2; *Anita*, 902 F.2d at 191; *Algie*, 891 F. Supp. at 893-94. Still, this factor focuses on whether the action benefitted "a group of pension plan *participants*," *Chambless*, 815 F.2d at 871, and the precedential effect of the Circuit's decision would primarily inure to the benefit of employers, not plan participants, *see Empire State Bus Corp. v. Loc. 854 Health & Welfare Fund*, No. 21-CV-10471, 2023 WL 1966210, at *8 (S.D.N.Y. Feb. 13, 2023) ("[A]n employer is not a participant, beneficiary, or

fiduciary under ERISA.") (citing *Tuvia Convalescent Ctr., Inc. v. Nat'l Union of Hosp. & Health Care Emps.*, 717 F.2d 726, 729-30 (2d Cir. 1983)).

Accordingly, even if this factor weighed in Plaintiff's favor, it would do so only slightly. Thus, the balance of factors favors Defendant, and Plaintiff's motion is denied.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Attorney's Fees is DENIED. The Clerk of the Court is respectfully directed to terminate ECF No. 291.

**SO ORDERED.**

Dated: August 31, 2026
White Plains, New York

Cathy Seibel

CATHY SEIBEL, U.S.D.J.